# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

ALEXANDER FRIEDMANN, )
          )
  Plaintiff, )
          )   Case No.
v. )
          )   JURY DEMAND
FRANK STRADA, )
BRETT COBBLE, )
BRENT KREMNITZER, )
and ARIEL MACE, )
          )
  Defendants. )

## COMPLAINT

## Introduction

1. This is a civil rights action brought under 42 U.S.C. § 1983 for monetary damages and declaratory and injunctive relief, brought by a state prisoner in the custody of the Tennessee Dept. of Correction (TDOC), alleging violations of the First and Fourteenth Amendments to the United States Constitution.

2. According to TDOC policy, inmates may serve as volunteer legal helpers to assist other prisoners with legal work.

1

3. The warden serves as a gatekeeper for all requests to serve as inmate legal helpers (a position that is separate and distinct from assigned, paid inmate legal aides who work in prison libraries).

4. There is no time limit for the warden to respond to such requests, nor any exceptions when inmates who need legal assistance have no other options or alternatives except to obtain help from other prisoners who have not been approved by the warden to serve as inmate legal helpers.

5. Absent approval by the warden to serve as inmate legal helpers, per TDOC policy, prisoners are barred from assisting other inmates with legal work.

6. There is a de facto policy at the Bledsoe County Correctional Complex Site 1 (BCCX) to deny all requests by prisoners to serve as volunteer inmate legal helpers, and no such legal helpers have been approved by the warden at BCCX in at least the past five years.

7. The Plaintiff, who is housed at BCCX, has requested to serve as an inmate legal helper numerous times and all his requests have been denied by the warden.

2

8. Although TDOC policy requires such denials to be due solely to specific security threats based on reasonable grounds, the denials of the Plaintiff's requests did not meet that criteria.

9. In March 2025, the Plaintiff submitted a request to help another inmate with legal work and notified the warden that that inmate had a short deadline to file a Rule 11 application to appeal to the Tennessee Supreme Court and had no other options to obtain legal assistance except from the Plaintiff.

10. Receiving no response from the warden, the Plaintiff prepared the Rule 11 application so the inmate could meet his filing deadline.

11. The Plaintiff was charged with a Class B disciplinary offense for doing so — specifically for helping another inmate with legal work without prior approval from the warden — and was convicted and spent 20 days in segregation as punishment.

12. Further, in Oct. and Nov. 2025, the Plaintiff submitted requests to help another inmate with legal work and notified the warden that that inmate had a short deadline to file a post-conviction petition and had no other options to obtain legal assistance except from the Plaintiff.

3

13. The Plaintiff's requests were denied by the warden and, consequently, the inmate needing legal assistance missed his deadline to file his post-conviction petition.

## JURISDICTION & PARTIES

14. The District Court has jurisdiction over the Plaintiff's claims of violations of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

15. Plaintiff Alexander Friedmann is a Tennessee state prisoner who was incarcerated at BCCX at all times during the events described in this complaint. His address is BCCX #135616, 1045 Horsehead Road, Pikeville, TN 37367.

16. Defendant Frank Strada is the Commissioner of the TDOC. He is responsible for promulgating and overseeing the application of all TDOC policies, and for granting or denying appeals of disciplinary convictions at the commissioner's level of review. He may be served through the TDOC at 320 Sixth Avenue North, Rachel Jackson Building, Nashville, TN 37243.

4

17. Defendant Brett Cobble, a TDOC employee, is the warden at BCCX. He is responsible for enforcing all TDOC policies, for promulgating and overseeing the application of all facility-specific policies at BCCX, for approving or denying prisoners' requests to serve as inmate legal helpers, and for granting or denying appeals of disciplinary convictions at the warden's level of review. He may be served through the TDOC at 320 Sixth Avenue North, Rachel Jackson Building, Nashville, TN 37243.

18. Defendant Brent Kremnitzer, a former TDOC employee, was employed as a correctional officer and was typically assigned to work in the library at BCCX; he is now believed to reside near Joliet, Illinois. He may be served through the TDOC at 320 Sixth Avenue North, Rachel Jackson Building, Nashville, TN 37243.

19. Defendant Ariel Mace, a TDOC employee, is assigned as a grievance officer at BCCX. She may be served through the TDOC at 320 Sixth Avenue North, Rachel Jackson Building, Nashville, TN 37243.

5

20. All the above Defendants are sued in their official capacities for purposes of declaratory and injunctive relief, and in their individual capacities for purposes of monetary damages.

21. All the above Defendants have acted under color of state law at all times relevant to the claims raised in this complaint.

6

## FACTUAL BACKGROUND

## TDOC Policies

22.     Pursuant to TDOC policy 501.04, "Legal Assistance by Inmates," prisoners who "wish to assist other inmates in preparing legal documents and/or correspondence must apply in writing to the Warden/Superintendent/designee and receive approval to perform such services." **Exhibit A, TDOC Policy 501.04.**

23.     Policy 501.04 provides no deadline or time frame for the warden to act on requests to serve as inmate legal helpers, even if prisoners who need legal help from other inmates have pending court deadlines.

24.     Pursuant to policy 501.04, the warden serves as the gatekeeper for prisoners' requests to serve as inmate legal helpers, and there is no provision in that policy to appeal should the warden deny such requests or fail to act on such requests.

25.     Policy 501.04 provides no exceptions for when inmates who need legal assistance have no other options or alternatives except to obtain help from other prisoners, even if those prisoners have not been approved by the warden to act as inmate legal helpers.

7

26. Policy 501.04 does not state or indicate that inmates not approved as legal helpers who provide legal assistance to other prisoners are committing a disciplinary offense.

27. Policy 501.04 states that inmates who apply to serve as inmate legal helpers "shall pass a test of minimum qualifications prior to approval."

28. The policy does not state what minimum score is required to pass the test.

29. The policy does not state who scores the test.

30. The policy provides no deadline or time frame in which the test or test results are to be provided.

31. The policy has no appeals process for inmates to contest their test score should it be determined they failed the test.

32. Presently, no inmates are approved to serve as inmate legal helpers at BCCX per Policy 501.04.

33. Upon information and belief, including the TDOC's response to a public records request, no inmates have been approved by the warden to serve as inmate legal helpers at BCCX pursuant to Policy 501.04 within at least the past five years.

8

34. Upon information and belief, Defendant Cobble has a de facto policy and practice of denying all requests from prisoners to serve as inmate legal helpers at BCCX pursuant to Policy 501.04.

35. Upon information and belief, including the affidavit of inmate Cletus Franklin, TDOC #345581, Mr. Franklin spoke with Defendant Cobble in person in late June 2025 regarding Mr. Franklin's requests to serve as an inmate legal helper, which had been denied by Defendant Cobble.

36. Defendant Cobble told Mr. Franklin, "We don't have inmate legal helpers here — do you see a list?" The "list" referred to a list of all approved inmate legal helpers which is required to be posted in housing units and other areas of the prison per Policy 501.04.VI.A. **Exhibit B, Declaration of inmate Cletus Franklin**.

37. Since 2023 the Plaintiff has submitted at least four requests to serve as an inmate legal helper pursuant to Policy 501.04.

38. All his requests were denied by Defendant Cobble or his predecessor.

39. Policy 509.02-1, Library Materials and Equipment, specifies that computers and typewriters in the library "are to be used for an

9

inmate's personal legal work only." **Exhibit C, TDOC policy 509.02-1.**

40. Policy 509.02-1 provides no exceptions for prisoners who have been approved to serve as inmate legal helpers per Policy 501.04 to use computers or typewriters in the library to prepare legal documents for the other inmates they are assisting.

41. Policy 509.02-1 provides no exceptions for prisoners not approved as inmate legal helpers to use computers or typewriters in the library to prepare legal documents for other prisoners they are assisting, when such prisoners have no other options or alternatives to obtain help with their legal needs except through prisoners not approved as inmate legal helpers.

42. Policy 509.02-1 does not state or indicate that using computers or typewriters in the library to prepare legal work for other inmates constitutes a disciplinary offense.

## Facts—Background

43.     From Nov. 2022 to Feb. 2023 the Plaintiff filed multiple grievances using the TDOC's grievance process, including two grievances against Defendant Mace — one of the grievance officers at BCCX — due to her failure to follow proper grievance procedures.

44.     The Plaintiff also helped over a dozen other inmates file grievances, mostly related to violations of the Americans with Disabilities Act (ADA).

45.     On Feb. 15, 2023, Defendant Mace issued a disciplinary report against the Plaintiff, falsely accusing him of forging/falsifying a document by signing another inmate's grievance form.

46.     The Plaintiff wrote the grievance in question, which is allowed by TDOC grievance procedures, but did not sign it.

47.     Nevertheless, he was found guilty of the disciplinary offense, and his conviction was affirmed on administrative appeal.

48.     He served six days in punitive segregation due to the disciplinary conviction and lost six days of sentence reduction good time credits.

49. Plaintiff subsequently obtained a sworn statement from another prisoner stating that Defendant Mace's inmate grievance clerk at the time had said the false disciplinary report issued by Defendant Mace against the Plaintiff was in retaliation for grievances the Plaintiff had filed against her and for helping other inmates file grievances. **See Exhibit D, Declaration of inmate Harold Hempstead.**

50. Two other inmates also provided sworn statements that Defendant Mace had falsely accused the Plaintiff of signing another prisoner's grievance in a separate disciplinary report that she issued against the Plaintiff.

51. That disciplinary report was later dismissed based on the statements of the two inmates. **Exhibit E, Declarations of Michael May and Phillip Young.**

52. On April 13, 2023, the Plaintiff submitted a request to serve as an inmate legal helper pursuant to policy 501.04.

53. His request was denied by then-warden Shawn Phillips on April 24, 2023, who stated because Plaintiff was "a diagnostic inmate" he "cannot be approved [for] a volunteer position."

54. Policy 501.04 has no restrictions on diagnostic inmates serving as inmate legal helpers.

55. On Sept. 19, 2023, the Plaintiff, then no longer a diagnostic inmate, again requested to serve as an inmate legal helper pursuant to policy 501.04.

56. His request was denied by then-warden Phillips due to the Plaintiff's disciplinary conviction described in ¶45 and because of a "Commissioner Alert" in Plaintiff's TDOC file, which he deemed a security threat.

57. The Commissioner Alert in Plaintiff's file, which Plaintiff has read, only states that TDOC central office must be notified before the Plaintiff is transferred out of the facility due to the nature of his criminal conviction.

58. The Commissioner Alert does not indicate the Plaintiff is a security threat for any specific or particular reason.

59. Per policy 501.04, approval for inmates to serve as legal helpers "shall be granted unless the provision of these services by the inmate would present a threat to the security of the facility, to

13

the inmate himself/herself, or to other inmates. The threat presented must be specific and based on reasonable grounds."

60. The denial of Plaintiff's Sept. 19, 2023, request to serve as an inmate legal helper per policy 501.04 did not state any specific security threat based on reasonable grounds.

61. In early 2024, after Warden Phillips was replaced by Defendant Cobble, Plaintiff submitted another request to serve as an inmate legal helper pursuant to policy 501.04.

62. That request was denied by Defendant Cobble for the same reasons cited by Warden Phillips in ¶56.

63. The denial of Plaintiff's early 2024 request to Defendant Cobble to serve as an inmate legal helper did not state any specific security threat based on reasonable grounds.

64. From November 2022 through early March 2025, the Plaintiff assisted other inmates at BCCX with their legal work, including with Tenn. R. Crim. P. 35 and 36 motions, post-conviction petitions, motions to reopen post-conviction petitions, and § 1983 litigation.

65. When providing such legal assistance, in addition to helping other inmates with their legal needs, Plaintiff developed his own

14

writing and research skills and legal arguments, and such work consisted of his own speech with respect to the pleadings and other documents he created and helped to improve and inform the Plaintiff's own legal work.

66. Defendant Kremnitzer and other staff assigned to the BCCX library had actual knowledge of and were aware that Plaintiff was assisting other inmates with their legal work.

67. Plaintiff did such work openly in the BCCX library using the library computers and did not try to conceal it.

68. From Nov. 2022 through early March 2025, Defendant Kremnitzer and other staff assigned to the BCCX library did not prohibit the Plaintiff from doing legal work for other inmates.

69. They did not order him to stop doing such work.

70. They did not issue disciplinary reports against him for doing such work.

71. They did not enter "contact notes" in Plaintiff's TDOC file indicating they had warned or counseled Plaintiff against doing such work.

15

72. At no time from Nov. 2022 through early March 2025 did Defendant Kremnitzer or other staff assigned to the BCCX library inform Plaintiff that helping other inmates with their legal work was a disciplinary offense, or that he could be subject to disciplinary action for providing such assistance.

73. On March 7, 2025, the Bledsoe County Chancery Court, in response to a petition for writ of certiorari filed by Plaintiff, reversed and remanded Plaintiff's conviction for the false disciplinary report issued by Defendant Mace, finding the TDOC had violated its own policies and there was no material evidence of the Plaintiff's guilt.

74. Plaintiff's disciplinary conviction was later dismissed and expunged by the TDOC in August 2025.

75. In early March 2025, inmate Kendrick Rodgers asked Plaintiff for assistance in preparing a Tenn. R. App. P. 11 application for permission to appeal Mr. Rodgers' criminal case to the Tennessee Supreme Court.

76. Mr. Rodgers stated his deadline to file the Rule 11 application was March 14, 2025.

16

77. Mr. Rodgers informed the Plaintiff that he had little knowledge of the law, could not prepare the Rule 11 application himself, and the sole inmate legal aide employed in the BCCX library had told him he could not help him "prepare, research or write" his Rule 11 application.

78. Mr. Rodgers had no other options for obtaining assistance with his Rule 11 application except from Plaintiff. **Exhibit F, Declaration of Kendrick Rodgers.**

79. On March 8, 2025, the Plaintiff submitted another request to Defendant Cobble to serve as an inmate legal helper pursuant to policy 501.04.

80. His request stated Mr. Rodgers had asked for Plaintiff's assistance, had a March 14 filing deadline, the inmate legal aide in the library could not assist him, and he had no other options for help in filing his Rule 11 application.

81. The request also noted that the Plaintiff's disciplinary conviction previously described had been reversed by the Chancery Court and the Commissioner Alert in his file had "no relation to

[his] serving as an inmate legal helper at this facility." **Exhibit G, March 8, 2025, Request to Defendant Cobble.**

82.     Having received no timely response from Defendant Cobble, and with Mr. Rodgers' deadline fast approaching, Plaintiff began preparing Mr. Rodgers' Rule 11 application using the computers in the BCCX library.

83.     Mr. Rodgers raised non-frivolous, legitimate issues in his Rule 11 application.

84.     Specifically, those issues related to the sufficiency of the evidence related to Tennessee's carjacking statute and whether the trial judge properly failed to recuse himself following *ex parte* communication with the jury.

## Facts—Disciplinary Report for Providing Legal Assistance

85.     On March 11, 2025, Plaintiff printed a partial draft of Mr. Rodgers' Rule 11 application using the library computers. Defendant Kremnitzer refused to give the printed draft to the Plaintiff, stating it was legal work for another inmate.

86.     That was the first time Defendant Kremnitzer or any other staff member had refused to let Plaintiff have legal work he had prepared for another inmate.

87.     Plaintiff returned to his unit, told Mr. Rodgers to go to the library, and Defendant Kremnitzer gave the partial draft of the Rule 11 application to Mr. Rodgers.

88.     Defendant Kremnitzer did not tell Plaintiff it was a disciplinary offense to help Mr. Rodgers with his legal work and did not issue a disciplinary report against the Plaintiff; he only told the Plaintiff he could not give him legal work prepared for another inmate.

89.     On March 12, 2025 — two days before Mr. Rodgers' Rule 11 filing deadline — Plaintiff returned to the BCCX library with Mr. Rodgers.

19

90. Plaintiff finished typing the Rule 11 application on the library computer and printed it out; Mr. Rodgers then asked Defendant Kremnitzer to give it to him.

91. Defendant Kremnitzer refused, and for the first time accused Plaintiff of a disciplinary offense for helping prepare another inmate's legal work.

92. A verbal argument ensued, and Mr. Rodgers told Defendant Kremnitzer that he had a filing deadline in two days and no other options but to obtain the Plaintiff's help in preparing the Rule 11 application.

93. Defendant Kremnitzer relented and gave the finished Rule 11 application to Mr. Rodgers; he also told the Plaintiff that he was going to "write him up" for unauthorized legal work, because that was what he "had been told to do."

94. That same day, March 12, 2025, Plaintiff received a disciplinary report for "Violation of TDOC / Institutional Policies."

95. The report stated that Defendant Kremnitzer "found inmate Alex Friedman [*sic*] #135616 in the I Building library using the legal computer to do legal work for inmate Rogers [sic] #375700.

20

Therefore I am citing inmate Friedman [*sic*] #135616 with violation of TDOC policy 509.02-1 ... and 501.04 ...."

96.     In addition to Defendant Kremnitzer, Defendant Mace was listed as a reporting official on the disciplinary report despite Defendant Mace not being present during the incident and being assigned as a grievance officer with no authority over the library.

97.     The disciplinary report listing Defendant Mace as a reporting official was issued just five days after the Chancery Court reversed the false disciplinary write-up that had been issued against the Plaintiff by Defendant Mace.  *See* **Exhibit H, Disciplinary Report Dated March 12, 2025.**

98.     Upon information and belief, Defendant Mace was aware of the Chancery Court decision that reversed and remanded the false disciplinary write-up she had previously issued against the Plaintiff.

99.     Shortly after the Chancery Court's ruling, Defendant Mace sent an email to one of her coworkers that stated, "Friedmann is pissing me off."

21

100. Plaintiff attended a disciplinary hearing on March 26, 2025, during which he questioned Defendant Kremnitzer.

101. Defendant Kremnitzer admitted Mr. Rodgers had told him he had a very short filing deadline and no other options but to obtain assistance from the Plaintiff to prepare his Rule 11 application.

102. Defendant Kremnitzer admitted he was aware that other prisoners did legal work for other inmates in the library and he had not issued disciplinary reports against them for doing so.

103. Defendant Kremnitzer admitted that he never entered contact notes in the Plaintiff's TDOC file that warned him not to do legal work for other inmates or that he would face disciplinary sanctions for doing so.

104. Defendant Kremnitzer further stated he would issue additional write-ups against the Plaintiff in the future if the Plaintiff continued to help other inmates with their legal work.

105. Plaintiff raised various defenses at the disciplinary hearing, including 1) he had attempted to comply with TDOC policy by sending the request to Defendant Cobble previously described, but had not received a timely response; 2) there was no adequate notice

that helping other inmates with their legal work constituted a disciplinary offense; 3) that policy 501.04 was unconstitutional both facially and as applied to the Plaintiff, as it provides no exceptions for helping inmates with legal work when they have no other options but to obtain assistance from prisoners who have not been approved as inmate legal helpers; 4) the Plaintiff was selectively disciplined, as other prisoners who helped inmates with legal work had not received similar disciplinary reports; and 5) the disciplinary report was retaliatory and was ordered or orchestrated by Defendant Mace, who was one of the reporting officials on the report and who had issued a prior false disciplinary report against the Plaintiff which had been reversed by the Chancery Court just five days before the Plaintiff received the write-up for preparing Mr. Rodgers' Rule 11 application.

106. Plaintiff was found guilty of the disciplinary report for "Violation of TDOC / Institutional Policies" and received 20 days in segregation (the maximum allowed).

107. Plaintiff appealed his disciplinary conviction to Defendant Cobble and then to Defendant Strada; his appeals were both denied,

exhausting the TDOC's administrative disciplinary appeals process.

108. On or about March 14, 2025, Plaintiff used the library computers to type a sworn declaration for Mr. Rodgers to sign to be used in this litigation.

109. Said document was titled "Sworn Declaration in Support of Alex Friedmann."

110. A BCCX library officer, Alexandra Sutej-Donnan, confiscated the declaration because it was not Plaintiff's "own legal work" per policies 501.04 and 509.02-1.

111. Plaintiff was threatened by Ms. Sutej-Donnan with a write-up for preparing the declaration to be used in this litigation.

112. Upon information and belief, Defendant Mace instructed Ms. Sutej-Donnan to so threaten the Plaintiff with this write-up.

113. After Plaintiff's typing and production of the above-described declaration, a notice was posted in the BCCX library that stated: "Accessing computer programs or doing anything on this computer other than typing your own legal work could result in a disciplinary report."

24

114. No such notice had been posted prior to March 14, 2025.

115. On April 16, 2025, after the Plaintiff was released from segregation, he printed a copy of the notice as well as the file metadata that showed the notice had been created on March 19, 2025 — i.e., a week after the Plaintiff received the disciplinary report (Exhibit H).

116. Plaintiff intended to use the notice and metadata in this litigation as exhibits, to show that no such notice had been posted at the time Plaintiff received the disciplinary report for helping Mr. Rodgers with his legal work.

117. Defendant Kremnitzer confiscated the notice and metadata, and Plaintiff was threatened with a write-up for printing those documents to be used in this litigation.

118. Since Plaintiff received the disciplinary report (Exhibit H), which resulted in his conviction and serving 20 days in segregation, several other inmates have requested his assistance with their legal work and stated they have no other options to obtain such assistance. See, e.g., **Exhibit I, Declaration of inmate Timothy A. Stephenson.**

25

119. Plaintiff desires to help other inmates who have requested his assistance with their legal work and have no other options to obtain such assistance but has been chilled from doing so due to the application and enforcement of policies 501.04 and 509.02-1 by Defendants Cobble and Kremnitzer, and other BCCX staff members.

120. Plaintiff desires to serve as a volunteer inmate legal helper pursuant to policy 501.04 but has been prevented from doing so due to the application and enforcement of policy 501.04 by Defendant Cobble.

121. On April 29, 2025, after Plaintiff submitted a follow-up inquiry and filed a grievance (grievance no. 372270), Defendant Cobble responded to Plaintiff's March 8, 2025, time-sensitive request to serve as an inmate legal helper so he could assist Mr. Rodgers with his Rule 11 application —five weeks after Plaintiff had submitted said request.

122. Defendant Cobble denied the Plaintiff's request "due to security risk. Reason for Commissioner Alert poses a security risk." **Exhibit J, Denial by Defendant Cobble**.

26

123. The denial of Plaintiff's March 8, 2025, request to serve as an inmate legal helper did not cite any specific security threat based on reasonable grounds as required by policy 501.04.

124. On Sept. 5, 2025, the Plaintiff submitted another request to serve as an inmate legal helper pursuant to policy 501.04, stipulating that — to alleviate any purported security concerns that Defendant Cobble may have — the Plaintiff would agree to only provide volunteer legal assistance to other inmates in his own housing unit and in the BCCX Site 1 library, where he already has access and where supervision is already provided by prison staff.

125. Defendant Cobble denied said request, stating, "As a legal helper you need to serve all inmates." **Exhibit K, Response by Defendant Cobble.**

126. In fact, TDOC policy 501.04 does not state or require inmate legal helpers to serve "all inmates" at all locations within a facility.

127. The denial of Plaintiff's Sept. 5, 2025, request to serve as an inmate legal helper did not state any specific security threat based on reasonable grounds as required by policy 501.04.

27

128. In late October 2025, inmate Shane Parks asked the Plaintiff to help him prepare a post-conviction petition.

129. Mr. Parks stated the inmate legal aide said he couldn't assist him due to Mr. Parks having a short deadline to file his petition, and Mr. Parks had no other options to obtain assistance with filing his petition. **Exhibit L, Declaration of Shane Parks.**

130. The Plaintiff was willing to assist Mr. Parks with filing his post-conviction petition, which raised non-frivolous claims for relief, but was prevented and chilled from doing so because such assistance would subject the Plaintiff to disciplinary charges under TDOC policies 501.04 and 509.02-1.

131. The Plaintiff sent two requests to Defendant Cobble on Oct. 27 and Nov. 6, 2025, asking for permission to assist Mr. Parks with filing his post-conviction petition, despite policies TDOC 501.04 and 509.02-1, due to Mr. Parks having a short deadline and because he had no other options to obtain legal assistance to file his petition.

132. Had Defendant Cobble granted permission for the Plaintiff to assist Mr. Parks, the Plaintiff would have been able to prepare and

28

file Mr. Parks' post-conviction petition, which raised non-frivolous claims for relief, by the filing deadline.

133. Specifically, such claims would have included trial counsel's failure to formulate a defense; failure to call witnesses that were available and would have provided mitigating testimony; and the failure of the trial court and trial counsel to inform Mr. Parks of the consequences if he did not comply with the terms of his plea agreement, which required him to testify against his co-defendants.

134. Defendant Cobble denied both requests.

135. Consequently, the Plaintiff did not prepare a post-conviction petition for Mr. Parks as the Plaintiff was prevented and chilled from doing so because such assistance would subject the Plaintiff to disciplinary charges under TDOC policies 501.04 and 509.02-1.

136. As a result, Mr. Parks missed his filing deadline for filing his post-conviction petition.

137. In addition to the examples cited above, Plaintiff submitted additional requests to Defendant Cobble in 2025 asking for permission to assist other inmates with their legal work, and all such requests were denied by Defendant Cobble.

138. TDOC policy 501.04 was promulgated by the TDOC Commissioner (currently Defendant Strada); said policy has been applied and enforced at BCCX by Defendant Cobble, Defendant Kremnitzer and other BCCX staff members.

139. TDOC policy 509.02-1 was promulgated by the BCCX warden (currently Defendant Cobble); said policy has been applied and enforced by Defendant Kremnitzer and other BCCX staff members.

## Facts—Exhaustion of Administrative Remedies

140. On March 10, 2023, Plaintiff filed a grievance (no. 358532) alleging that Defendant Mace filed a retaliatory disciplinary charge against Plaintiff for having filed grievances against Defendant Mace and for helping other inmates file grievances.

141. The grievance was denied and the Plaintiff appealed to the second and third levels of review where it was denied.

142. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

143. On March 18, 2025, the Plaintiff filed a grievance (no. 371861) challenging the constitutionality of TDOC policy 501.04.

144. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

145. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

146. On March 18, 2025, the Plaintiff filed a grievance (no. 371984) alleging that Defendant Mace had ordered or orchestrated the disciplinary report in retaliation for the Plaintiff having obtained a court order reversing the false disciplinary charge filed against the Plaintiff by Defendant Mace.

147. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

148. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

149. On March 31, 2025, the Plaintiff filed a grievance (no. 372114) alleging that Defendant Kremnitzer had issued the disciplinary report in retaliation for the Plaintiff helping another inmate (Mr. Rodgers) with his legal work.

150. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

151. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

152. On April 22, 2025, the Plaintiff filed a grievance (no. 372477) challenging the constitutionality of TDOC policy 509.02-1.

153. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

154. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

155. On December 4, 2025, the Plaintiff filed a grievance (no. 376187) regarding Defendant Cobble's denial of the Plaintiff's request to help inmate Shane Parks file his post-conviction petition, resulting in Mr. Parks missing his post-conviction filing deadline.

156. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

Case 3:26-cv-00258 Document 1 Filed 03/06/26 Page 32 of 44 PageID #: 32

157. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

158. On December 24, 2025, the Plaintiff filed a grievance (no. 376452) regarding Defendant Cobble having an ongoing pattern and practice of denying all the Plaintiff's requests to help other inmates with their legal work, even when such inmates had no other options or alternatives to obtain such assistance except from the Plaintiff.

159. The grievance was denied and the Plaintiff appealed to the second and third levels of review, where it was denied by Defendants Cobble and Strada, respectively.

160. The Plaintiff has exhausted his administrative remedies through the grievance process with respect to this issue.

## CAUSES OF ACTION

### TDOC Policy 501.04 — Constitutionality (Facial Challenge)

161. All previous paragraphs are incorporated herein.

162. TDOC policy 501.04, as promulgated by Defendant Strada and applied and enforced by Defendants Cobble and Kremnitzer, is facially unconstitutional as it violates the derivative First Amendment right of access to the courts of prisoners — including the Plaintiff — by prohibiting them from providing legal assistance to other inmates who have no other options or alternatives to obtain such assistance except from prisoners who have not been approved as inmate legal helpers.

163. TDOC policy 501.04, as promulgated by Defendant Strada and applied and enforced by Defendants Cobble and Kremnitzer, is unconstitutional as applied to the Plaintiff because it violates the Plaintiff's derivative First Amendment right of access to the courts by prohibiting the Plaintiff from providing legal assistance to inmates who have no other options or alternatives to obtain such assistance except from the Plaintiff.

164. Defendant Cobble's practice and de facto policy of denying all requests by prisoners to serve as inmate legal helpers pursuant to TDOC policy 501.04 — including the Plaintiff's requests — violates the Plaintiff's derivative First Amendment right of access to the courts by prohibiting the Plaintiff from providing legal assistance to inmates who have no other options or alternatives to obtain such assistance except from the Plaintiff.

165. TDOC policy 501.04, as promulgated by Defendant Strada and applied and enforced by Defendants Cobble and Kremnitzer, is unconstitutional as applied to the Plaintiff because it violates the Plaintiff's First Amendment rights by prohibiting him from preparing legal work that includes the Plaintiff's own writing and speech, and by acting as a prior restraint on the Plaintiff's production of such legal work for his own use and benefit in addition to the use and benefit of the other inmates he desires to assist.

## TDOC Policy 509.02-1 — Constitutionality (Facial Challenge)

166. All previous paragraphs are incorporated herein.

167. TDOC Policy 509.02-1, as promulgated by Defendant Cobble and applied and enforced by Defendants Cobble and Kremnitzer, is facially unconstitutional as it violates the derivative First Amendment right of access to the courts of prisoners — including the Plaintiff — by prohibiting them from preparing legal documents for other inmates using the library computers and typewriters, when such prisoners have no other options or alternatives to obtain such assistance with preparing their legal documents.

168. TDOC Policy 509.02-1, as promulgated by Defendant Cobble and applied and enforced by Defendants Cobble and Kremnitzer, is unconstitutional as applied to the Plaintiff because it violates the Plaintiff's derivative First Amendment right of access to the courts by prohibiting him from preparing legal documents for other inmates using the library computers and typewriters, when such prisoners have no other options or alternatives to obtain such assistance with preparing their legal documents except from the Plaintiff.

## First Amendment Violations by Defendant Cobble

169.    All previous paragraphs are incorporated herein.

170.    Defendant Cobble violated the Plaintiff's derivative First Amendment right of access to the courts when he denied the Plaintiff's requests to prepare a Rule 11 application for inmate Kendrick Rodgers, when Mr. Rodgers had no other options or alternatives to obtain such assistance except from the Plaintiff.

171.    Defendant Cobble violated the Plaintiff's derivative First Amendment right of access to the courts when he denied the Plaintiff's requests to prepare a post-conviction petition for inmate Shane Parks, when Mr. Parks had no other options or alternatives to obtain such assistance except from the Plaintiff.

## Due Process — Notice of Disciplinary Offense

172.    All previous paragraphs are incorporated herein.

173.    The disciplinary report filed against the Plaintiff by Defendant Kremnitzer violated the Plaintiff's Due Process rights under the 14th Amendment because the Plaintiff had no prior notice that voluntarily providing legal assistance to other inmates constituted a disciplinary offense under TDOC policies 501.04 and 509.02-1.

Case 3:26-cv-00258    Document 1    Filed 03/06/26    Page 38 of 44 PageID #: 38

## Retaliation — Defendant Mace

174. All previous paragraphs are incorporated herein.

175. Defendant Mace violated the Plaintiff's First Amendment rights by filing false disciplinary reports (e.g., see paragraphs ¶¶ 45-51) in retaliation for the Plaintiff's having filed grievances against Defendant Mace and for helping other inmates file grievances, as evidenced by the sworn declarations of inmates Harold Hempstead, Michael May, and Phillip Young.

176. Defendant Mace violated the Plaintiff's First Amendment rights by ordering or orchestrating the disciplinary report against the Plaintiff in retaliation for the Plaintiff successfully litigating and obtaining the reversal of the false disciplinary charge Defendant Mace had previously filed against the Plaintiff.

177. The disciplinary report, where Defendant Mace was one of the reporting officers despite not being present during the incident and not being assigned to the library where the incident occurred, was issued just five days after the Plaintiff obtained the reversal of his conviction for the false disciplinary report filed against him by Defendant Mace.

39

## Retaliation — Defendant Kremnitzer

178.     All previous paragraphs are incorporated herein.

179.     Defendant Kremnitzer violated the Plaintiff's derivative First Amendment right of access to the courts by filing the disciplinary report against the Plaintiff in retaliation for the Plaintiff assisting Mr. Rodgers with his legal work, when Mr. Rodgers had no other options or alternatives to obtain such assistance except from the Plaintiff.

40

## Equal Protection – Class of One

180. All previous paragraphs are incorporated herein.

181. With respect to the disciplinary report, Plaintiff raises an equal protection class-of-one claim against Defendant Kremnitzer due to Defendant Kremnitzer's arbitrary, malicious and disparate treatment of the Plaintiff for providing legal assistance to Mr. Rodgers, when other similarly situated prisoners who helped other inmates with legal work did not receive disciplinary reports for doing so, with no rational basis for such disparity in treatment.

## RELIEF REQUESTED

The Plaintiff requests that the Court grant the following relief:

1. Issue a declaratory judgment against the Defendants in their official capacity, stating that:

   a. TDOC policy 501.04 is facially unconstitutional, or alternatively that said policy is unconstitutional as it has been applied to the Plaintiff as set forth herein;

   b. TDOC policy 509.02-1 is facially unconstitutional, or alternatively that said policy is unconstitutional as it has been applied to the Plaintiff as set forth herein;

   c. Defendants Strada, Cobble, Mace and Kremnitzer violated the Plaintiff's rights as set forth in the Causes of Action herein.

2. Issue an injunction against the Defendants in their official capacity, requiring them to:

   a. Refrain from enforcing TDOC policy 501.04 until said policy is amended to comply with constitutional requirements, or in the alternative refrain from enforcing TDOC policy 501.04

42

against the Plaintiff until said policy is amended to comply with constitutional requirements.

    b. Refrain from enforcing TDOC policy 509.02-1 until said policy is amended to comply with constitutional requirements, or in the alternative refrain from enforcing TDOC policy 509.02-1 against the Plaintiff until said policy is amended to comply with constitutional requirements.

3. Award compensatory damages jointly and severally against the Defendants in their individual capacities.

4. Award presumed and/or nominal damages jointly and severally against the Defendants in their individual capacities.

5. Award punitive damages jointly and severally against the Defendants in their individual capacities.

6. Award reasonable attorney fees and costs of this litigation.

7. Grant such other relief as the Court determines the Plaintiff is entitled.

Respectfully submitted,
/s/ Christopher Smith
Christopher Smith
DAVID RANDOLPH SMITH & ASSOCIATES
Christopher Smith, BPR #034450
1913 21st Ave S
Nashville, Tennessee 37212
Phone: 615-742-1775
Fax: 615-742-1223
csmith@drslawfirm.com

44